## HAYDON v. NEWMAN et al.

### No. 5440.

Court of Civil Appeals of Texas. Amarillo.

June 1, 1942.

Rehearing Denied June 22, 1942.

Griffin & Morehead, of Plainview, for appellant.

Clayton & Bralley, of Amarillo, for appellees.

JACKSON, Chief Justice.

The record discloses that on December 31, 1940, Lyman Newman, Joe Newman, Newman Garage and Oil Company, a partnership composed of Lyman and Joe Newman, hereinafter designated as the Newmans, sold to Lavelle Haydon a 1941 Model Plymouth Sedan for a consideration of $1,189.52, paid by an old motor car at an agreed cash value of $404 and the execution by Haydon of a promissory note for $795.52, payable to the Newmans in monthly installments of $32.73 each. The payment of the note and the installments was secured by a valid chattel mortgage on the 1941 Model Plymouth.

The note provides that failure to pay any installment of said note when due shall mature the whole unpaid balance of said note.

The chattel mortgage provides among other things that: "In case default be made in the payment of said debt, or interest, or any installment of said note, * * * the whole amount herein secured, remaining unpaid shall at once become due and payable, and said Mortgagee, may, without notice, foreclose this mortgage by action or otherwise, and said Mortgagee is hereby authorized to enter upon the premises where said goods and chattels may be and remove and sell the same and all equity of redemption of the Mortgagor therein either at public auction * * * or by private sale, without notice for cash or on credit * * * without demand for performance and out of the proceeds of said sale pay the cost of foreclosing this mortgage and the expense of pursuing, taking, keeping, advertising and selling said goods and chattels, including all costs for repairs necessary to put the said chattels in condition for sale, and including all taxes, insurance or other expenses hereunder, and including the usual and customary commission for a resale of an automobile and including a reasonable attorney's fee, and apply the residue thereof toward the payment of said indebtedness * * * and rendering the surplus, if any, unto the Mortgagor," etc.

The Newmans promptly sold the note and mortgage in due course to the Southwestern Investment Company.

Haydon defaulted in the payment of the first and second installments on the note

and the Southwestern Investment Company, under the authority of the note and mortgage, repossessed the car and delivered it to the Newmans, who some time thereafter sold the car to J. J. Vandervoort, who paid $420 by the delivery of an old car which was accepted by the Newmans as cash and the execution of an installment note payable monthly in twenty-four installments of $30.50 each, aggregating $732, or a total consideration for the automobile of $1,152.

Lavelle Haydon, the plaintiff, by his first amended original petition filed on September 26, 1941, in the District Court of Hale County, Texas, instituted suit against the Newmans and the Southwestern Investment Company, a corporation of Texas, for damages for the alleged conversion of the Plymouth automobile. In the alternative he pleaded that should it be determined that he was not entitled to recover for the conversion he alleged that the defendants had sold his car to J. J. Vandervoort for the sum of $1,000 and he was entitled to recover damages and prayed for interest and costs and such other and further relief, general and special, to which he might be entitled.

The Newmans answered by general demurrer, special exceptions, general denial, pleaded the sale of the car to plaintiff, the consideration agreed to be paid therefor, the acceptance of his old car as the cash payment and the execution of a note for the balance amounting to $795.52, payable in monthly installments. They pleaded the mortgage securing the payment thereof and the terms and provisions of the note and mortgage relative to default, repossession, sale and the expenses of taking, keeping and repairing the automobile, the sale of the note and mortgage to its co-defendant and the repurchase thereof after the default of the plaintiff They admitted the resale of the car at private sale after having spent the following alleged amounts on said car: seat covers, $15; refinish fenders, wash, polish, change oil, $13; license and repossession affidavit and title, $10.50; storage, $17.50 and a commission of $29.75. They admit accepting from J. J. Vandervoort an automobile as the cash payment valued at $420 and the execution and delivery to them by him of his installment note for $732, payable in monthly installments of $30.50 each. They pleaded various other transactions relative to the acceptance, sale and purchase of old cars in connection with the original sale and

resale of the automobile in controversy but if any loss were sustained in connection with these transactions the testimony fails to show it and if it did it would not be, in our opinion, chargeable to the plaintiff.

The Southwestern Investment Company answered by general demurrer, special exception, general denial, pleaded its purchase of the note in due course from the Newmans and, in substance, made the allegation made by the Newmans relative to the note, mortgage, sale and resale of the automobile.

In a supplemental petition in reply to the provisions of the mortgage urged by the defendants as a defense to the conversion the plaintiff pleaded that the sale of the car by the defendants was not made for a fair, adequate or reasonable price but that they received the sum of $1,000 therefor and in any event he was entitled to recover the difference between the amount the defendants received for the car and the amount of any debt which was due them by him for the car.

At the conclusion of the testimony the judge directed a verdict in behalf of the defendants and in obedience thereto the jury found that plaintiff was not entitled to recover and on such verdict judgment was rendered that plaintiff take nothing by his suit and from this judgment he prosecutes this appeal.

█ The appellant challenges the action of the court in directing a verdict against him because he asserts the pleading and testimony presented an issue as to the conversion by the appellees of his automobile. The testimony shows that the car was not taken by stealth nor by force, as plaintiff claims, but was removed from the street to the garage of the Newmans under the provisions of the note and mortgage and, under the uncontroverted testimony, we are of the opinion that he was not entitled to recover for the car or its conversion.

The appellant also presents as error the action of the court in directing a verdict against him because he contends that under the pleadings and the testimony the appellees received more for the car than the indebtedness claimed by them against him and he was entitled to a judgment for the difference.

██ The testimony tends to show that the car sold to Mr. Vandervoort had a market value at the time and place of

1043

$1,000; that the car after having been repossessed was run about 2,000 miles by the Newmans and then sold for $1,152. Admittedly, plaintiff's installment note was but for $785.52. This difference the appellees undertake to account for by pleading certain expenses authorized by the mortgage such as the purchase of new seat covers, refinishing fenders, purchasing title and repossession affidavit, storage and commission, but it will be observed that in order for the appellees to recover for these charges, under the mortgage they must show that such charges were reasonable and were necessary to the resale of the automobile. The appellees wholly failed to show that any of the charges made were necessary or that the price claimed therefor was reasonable. The testimony tends to show that the automobile was in good condition when repossessed; that it did not need new seat covers, a refinish of the fenders, oiling or cleaning and, in our opinion, the court committed reversible error in directing a verdict in behalf of appellees as against appellant on this issue.

It is elementary that the mortgagor, after the payment of his debt and interest and the cost and expenses connected with the foreclosure, is entitled to receive the excess obtained for his property over and above his indebtedness to the mortgagee. 10 Am.Jur. 885; Lang et al. v. Harwood, Tex.Civ.App., 145 S.W.2d 945.

The judgment is reversed and the cause remanded.